THOMAS B. JUBIN
Wyoming State Bar No. 5-2433
Jubin & Zerga, LLC
P.O. Box 943
Cheyenne, Wyoming 82003
(307) 637-4965
tom@jubinzerga.com

J. MARK BAIRD
(pending pro hac vice admission)
Baird Quinn, LLC
The Bushong Mansion
2036 E. 17th Avenue
Denver, Colorado 80206
(303) 813-4500
jmb@bairdquinn.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 JAN 13 PM 3 00

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JOHN NAGY,<br><br>Plaintiff,<br><br>v.<br><br>SINCLAIR WYOMING REFINING COMPANY, and<br><br>SINCLAIR OIL CORPORATION,<br><br>Defendants. | Civil Complaint<br><br>Case No. 16-CV-07-F |

**COMPLAINT**

The Plaintiff, John Nagy, by his attorneys, JUBIN & ZERGA, LLC, and BAIRD QUINN, LLC, alleges for his claims against the Defendants, Sinclair Wyoming Refining Company and Sinclair Oil Corporation, as follows:

## I. INTRODUCTION

1. Plaintiff John Nagy was employed by Sinclair Wyoming Refining Company ("Sinclair Refining") as the Technical, Process Safety Management, Planning and Logistics Manager at its refinery in Sinclair, Wyoming, from about February 2012 to January 31, 2013. Defendants, through their agents, subjected Mr. Nagy to unlawful discrimination due to his disability/perceived disability, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*(the ADA). Defendants also retaliated against Mr. Nagy due to his requests for reasonable accommodation. This is an action for damages and other relief for the injuries suffered by Mr. Nagy due to the Defendants' discriminatory conduct, in violation of their legal obligations under the ADA.

## II. JURISDICTION AND VENUE

2. Mr. Nagy asserts claims under the ADA, 42 U.S.C. § 12101 *et seq.*, which provides jurisdiction to this Court over this action. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337 and 1343.

3. Venue is proper under 28 U.S.C. § 1391 because the unlawful employment practices described herein have been committed in the District of Wyoming, the employment records relevant to those practices are, on information and belief, maintained in the District of Wyoming, and Defendants maintain one or more offices and conduct business in the District of Wyoming.

## III. PARTIES

4. Plaintiff is an individual who resides at 505 Spartan Dr. Unit 3204, Slidell, Louisiana, 70458.

5. Defendant Sinclair Wyoming Refining Company ("Sinclair Refining") is a Wyoming Corporation with its principle place of business at 100 E. Lincolnway Highway, Sinclair, Wyoming, 82334. Defendant Sinclair Oil Corporation ("Sinclair Oil") is a Wyoming Corporation with its principle place of business at 550 East South Temple, Salt Lake City, Utah, 84130, doing business in Wyoming, including management and operations at Defendant Sinclair Wyoming Refining Company.

6. From his first day of employment with Defendants until January 31, 2013, Mr. Nagy was an "employee" of Sinclair Refining, as that term is defined by the ADA.

7. From Mr. Nagy's first day of employment with Defendants until January 31, 2013, Sinclair Refining and Sinclair Oil both were an "employer" of Mr. Nagy, as that term is defined by the ADA.

## IV. ADMINISTRATIVE PROCEDURES

8. On or about April 29, 2013, Mr. Nagy filed a timely Charge of Discrimination against the Defendants, alleging disability discrimination and retaliation claims with the U.S. Equal Employment Opportunity Commission ("EEOC").

9. On July 9, 2015, the EEOC issued a Determination on Mr. Nagy's Charge of Discrimination, finding:

> Charging Party alleges that he was discriminated against in violation of the ADA when Respondent invoked his reasonable accommodation and discharged his employment

because of his disability, and in retaliation for engaging in protected activity.

I have considered all of the evidence obtained during the investigation presented and conclude there is reasonable cause to believe that due to Charging Party's disability and/or because he was regarded as possessing a disability, the Respondent revoked Charging Party's accommodation, and discharged his employment in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended (ADA).

10. On October 15, 2015, the EEOC issued a Notice of Right to Sue to Mr. Nagy, which was received by him on October 19, 2015.

11. This lawsuit has been filed within 90 days of Mr. Nagy's receipt of the Notice of Right to Sue.

12. Mr. Nagy has fulfilled all administrative prerequisites to this action with respect to the claims asserted in this Complaint.

## V. GENERAL ALLEGATIONS

13. The Defendants operate oil refineries in Wyoming.

14. In February 2012, Mr. Nagy became employed by Sinclair Refining as the Technical, Process Safety Management, Planning and Logistics Manager at the Defendants' refinery in Sinclair, Wyoming.

15. Mr. Nagy's responsibilities included managing chemical engineers, process safety management and site inspections, production planning and oil movements, and the laboratory.

16. At the time Mr. Nagy commenced employment with Defendants, he suffered from Type I Pityriasis Rubra Pilaris (a/k/a PRP).

17. PRP is a rare skin disease characterized by discoloration and scaling of

the victim's skin, uncomfortable itching, and a thickening of skin on palms and feet and around hair follicles. It may also cause open sores and inflammation on the hands and feet, and swelling of the legs, feet and other parts of the body.

18. Mr. Nagy suffered an acute onset of this condition in April 2011.

19. Mr. Nagy has been hospitalized on five (5) separate occasions due to PRP and its associated symptoms, multiple infections and incapacitating chills and swelling.

20. Mr. Nagy has been prescribed different regimens of prescription medications, including predisone (a steroid), and soriantane (which is an experimental skin mediation), to address PRP and its associated symptoms.

21. PRP has substantially limited Mr. Nagy's major life activities, by causing excessive fatigue, immobility, an inability to care for himself, and a significant limitation in the ability to work.

22. PRP has also substantially limited Mr. Nagy's immune system (due to frequent infections), and normal cell growth.

23. At the time Mr. Nagy commenced employment at Sinclair Refining, Jim Maguire was Refinery Manager at the plant near Rawlins.

24. As a reasonable accommodation, Mr. Nagy asked Mr. Maguire to permit Mr. Nagy to take off every other Friday – Monday to see various physicians and specialists in New Orleans, Louisiana.

25. Mr. Nagy agreed to make up the missed time by working while he was in town, including weekends. Further, while Mr. Nagy was away due to his doctor's appointments, he continued working from his laptop.

26. This work scheduled never posed any problems with Mr. Nagy's work performance.

27. Further, with this schedule and Mr. Nagy's agreement to cover certain holidays, Mr. Nagy ended up working more days than a standard schedule.

28. Defendants also allowed non-disabled employees at the Rawlins plant to work flexible schedules.

29. During Mr. Nagy's eleven (11) months of employment, he did not receive a formal performance evaluation.

30. Mr. Nagy did, however, have informal conversations with the four (4) Refinery Managers to whom he reported, including Jim Maguire, Mike Achacoso, Paul Moote, and Steve Sondergard. They gave Mr. Nagy nothing but positive feedback regarding his performance.

31. In late-November 2012, Steve Sondergard started as Refinery Manager.

32. Mr. Nagy explained to Mr. Sondergard that he was working a modified schedule due to his PRP.

33. Mr. Sondergard did not advise Mr. Nagy of any objections to the modified schedule provided to Mr. Nagy as a reasonable accommodation for his medical condition.

34. Around Thanksgiving 2012, Mr. Nagy met with Paul Moote, Vice President of Refining Operations for Sinclair Oil, and Mr. Sondergard.

35. At the meeting, Mr. Moote stated that Defendants intended to require Mr. Nagy to work a standard Monday – Friday schedule, thus removing Mr. Nagy's requested reasonable accommodation, effective January 1, 2013.

36. Mr. Moote stated that Ross Matthews, the Chief Executive Officer of Sinclair Oil, did not like Mr. Nagy's modified work schedule.

37. Mr. Nagy responded that he had already booked a flight for his January doctor's visits and Mr. Moote responded that Mr. Nagy could attend the appointments associated with the flight arrangements.

38. Mr. Nagy responded that he wanted to stay with Sinclair and would comply with the new schedule requirements after the January appointments.

39. Mr. Moote told Mr. Nagy that he was an asset to Sinclair and that he was happy that Mr. Nagy was willing to meet Respondent's new conditions for Mr. Nagy to continue his employment.

40. In December 2012, Mr. Nagy was hospitalized for about five (5) days due to his PRP condition.

41. Jody Smith, Human Resources Manager, told Mr. Nagy to obtain a doctor's release to return to work, including a statement as to whether his condition was contagious.

42. Mr. Nagy provided the requested note and was permitted to return to work.

43. In early January 2012, Ms. Smith told Mr. Nagy that unidentified employees were concerned about whether his PRP was contagious.

44. Mr. Nagy told Ms. Smith that his condition was not contagious.

45. Ms. Smith, as an agent of Sinclair, required Mr. Nagy to see a physician in Rawlins, Wyoming, to determine whether his PRP posed a danger to other employees.

46. The physician gave Mr. Nagy a full release to return to work, indicating that Mr. Nagy's PRP was not contagious.

47. Mr. Nagy turned in the release to Ms. Smith and returned to work.

48. Very shortly thereafter, on January 31, 2013, Mr. Sondergard called Mr. Nagy into this office.

49. Ms. Smith was present for the meeting.

50. At the meeting, Mr. Sondergard terminated Mr. Nagy's employment, asserting unspecified "performance" issues.

51. Prior to the termination meeting, Mr. Sondergard did not advise Mr. Nagy that his performance was deficient in any respect.

52. Further, by the time the termination occurred, Mr. Nagy was working the new, regular schedule required by Defendants.

53. Mr. Nagy's termination was immediately effective.

## VI. FIRST CLAIM FOR RELIEF
(Disability Discrimination in Violation of the ADA)

54. Mr. Nagy incorporates the allegations set forth in the preceding paragraphs of this Complaint.

55. Mr. Nagy is an individual with a disability as defined by the Americans with Disabilities Act (ADA).

56. Mr. Nagy was qualified, with reasonable accommodation, to perform the essential functions of his job at Defendant Sinclair Refining.

57. Mr. Nagy satisfactorily performed his job responsibilities at Defendant Sinclair Refining.

58. Mr. Nagy suffered adverse employment actions and discrimination by Defendants because of his disability, including the decision to discharge him from his employment.

59. Defendants treated Plaintiff less favorably than non-disabled employees.

60. Defendants' actions were willful and wanton and in reckless disregard of Mr. Nagy's federally protected rights.

61. Plaintiff was damaged by Defendants' discriminatory actions, as set forth below.

## VII. SECOND CLAIM FOR RELIEF
### (Disability Discrimination in Violation of the ADA)

62. Mr. Nagy incorporates the allegations set forth in the preceding paragraphs of this Complaint.

63. Mr. Nagy requested a reasonable accommodation from Sinclair Refining due to his disability in the form of a modified work schedule so Mr. Nagy could continue to obtain medical treatment from a specialist for his disability.

64. Defendant Sinclair Refining initially granted Mr. Nagy his requested reasonable accommodation.

65. Mr. Nagy was able to perform his essential job functions with the reasonable accommodation provided by Sinclair Refining.

66. Defendants later revoked the reasonable accommodation Sinclair Refining had agreed to provide Mr. Nagy.

67. By revoking the reasonable accommodation, Defendants subjected Mr. Nagy to an adverse employment action in violation of the ADA.

68.     Defendants treated Plaintiff less favorably than non-disabled employees with respect to a modified work schedule.

69.     Defendants' actions were willful and wanton and in reckless disregard of Mr. Nagy's federally protected rights.

70.     Mr. Nagy was damaged by Defendants' actions, as set forth below.

## VIII. THIRD CLAIM FOR RELIEF
### (Retaliation in Violation of the ADA)

71.     Mr. Nagy incorporates the allegations set forth in the preceding paragraphs of this Complaint.

72.     Mr. Nagy requested a reasonable accommodation from Defendants due to his disability in the form of a modified work schedule so Mr. Nagy could continue to obtain medical treatment from a specialist for his disability.

73.     By requesting a reasonable accommodation due to his disability, Mr. Nagy engaged in protected activity under the ADA.

74.     Mr. Nagy was subjected to adverse employment actions and retaliation by Defendants due to his protected activity, in the form of unlawful medical inquiries, revocation of his requested reasonable accommodation and termination from employment.

75.     Defendants' actions were willful and wanton and in reckless disregard of Mr. Nagy's federally protected rights.

76.     Plaintiff was damaged by Defendants' discriminatory actions, as set forth below.

...

## IX. FOURTH CLAIM FOR RELIEF
### (Unlawful Medical Inquiries in Violation of the ADA)

77. Mr. Nagy incorporates the allegations set forth in the preceding paragraphs of this Complaint.

78. Defendants required Mr. Nagy to see a physician due to his RPR.

79. By requiring Mr. Nagy to see a physician and obtain a release to return to work, Defendants made improper medical inquiries in violation of the ADA.

80. Defendants' actions were willful and wanton and in reckless disregard of Mr. Nagy's federally protected rights.

81. Plaintiff was damaged by Defendants' discriminatory actions, as set forth below.

## X. DAMAGES

82. Mr. Nagy incorporates the allegations set forth in the preceding paragraphs of this Complaint.

83. As a result of the unlawful actions of the Defendants described in this Complaint, Mr. Nagy suffered damages, including, but not limited to:

(A) Damages for past and future lost wages and benefits, in an amount to be proven at trial;

(B) Damages for emotional distress suffered by Mr. Nagy due to the discriminatory practices of Defendants, in an amount to be proven at trial;

(C) Damages for costs and expenses incurred by Mr. Nagy;

(D) Liquidated damages and punitive damages;

(E)   Attorneys' fees, expert witness fees and other litigation costs; and

(F)   Pre- and post-judgment interest.

WHEREFORE, Mr. Nagy prays for judgment in his favor and against Defendants, awarding such damages as are just, including, but not limited to:

(A)   Damages for past and future lost wages and benefits, in an amount to be proven at trial;

(B)   Damages for emotional distress suffered by Mr. Nagy due to the discriminatory practices of Defendants, in an amount to be proven at trial;

(C)   Damages for costs and expenses incurred by Mr. Nagy;

(D)   Liquidated damages and punitive damages;

(E)   An award of Mr. Nagy's reasonable attorneys' fees and expert witness fees and other ltigation costs;

(F)   Pre- and post-judgment interest; and

(G)   Such other and further relief as the Court deems proper.

## JURY DEMAND

**MR. NAGY DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

DATED this 13th day of January 2016.

Respectfully submitted,
JOHN NAGY, by

/s/ Thomas B. Jubin
Thomas B. Jubin, No. 5-2433
ATTORNEY FOR PLAINTIFF
tom@jubinzerga.com